**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

WALTER CARR       )
           )
   Plaintiff,     )
           )   No. 21-cv-6301
   v.        )
           )   Judge Marvin E. Aspen
JAMES MENDRICK, in his official capacity )
as DuPage County Sheriff, MONTERREY )
SECURITY CONSULTANTS, INC., and  )
BRIAN BEEBE,      )
           )
   Defendants.    )

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Defendants James Mendrick and Brian Beebe move under Federal Rules of Civil Procedure 12(b)(5) and (6) to dismiss Plaintiff Walter Carr's claims against them. (Mendrick's Combined Rule 12(b)(5) & (6) Motion to Dismiss Plaintiff's Complaint ("Mendrick Mot.") (Dkt. No. 25); Beebe's Combined Rule 12(b)(5) & (6) Motion to Dismiss Plaintiff's Complaint ("Beebe Mot.") (Dkt. No. 34).)[1] For the following reasons, we grant Mendrick's motion and deny Beebe's motion.

**BACKGROUND**

We draw the following allegations from Carr's Complaint and accept them as true for the purposes of these motions. *Pavlock v. Holcomb*, 35 F.4th 581, 585 (7th Cir. 2022). On November 24, 2019, Carr and Beebe, a Deputy Sheriff for DuPage County, were both working as security guards at Soldier Field stadium in Chicago. (Complaint ("Compl.") (Dkt. No. 1)

---

[1] For ECF filings, we cite to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

1

¶¶ 10–12.)  That afternoon, Beebe observed Carr in a restricted area.  (*Id.* ¶ 13.)  Not knowing

that Carr was also a security guard, Beebe confronted Carr and grabbed him.  (*Id.* ¶¶ 13, 14.)

Beebe then struck Carr and forcefully took him to the ground.  (*Id.* ¶ 16.)  Beebe's actions

injured Carr, causing head pain, bruises, and lacerations, and Carr was taken to the hospital.  (*Id.*

¶¶ 16–18.)  After the incident, police arrested Carr and charged him with resisting a peace

officer.  (*Id.* ¶ 22.)  The Cook County State's Attorney later dismissed the charge against Carr.

(*Id.* ¶ 23.)

Carr brought this suit on November 23, 2021, alleging claims against Beebe in his

individual capacity; Mendrick, who is the DuPage County Sheriff, in his official capacity; and

Monterrey Securities Consultants, Inc. ("Monterrey"), which employed Beebe as a security

guard.  (*Id.* ¶¶ 2–4.)  Counts I and II assert that Beebe is liable under 42 U.S.C. § 1983 for

violating Carr's rights against unreasonable seizures and excessive force under the Fourth and

Fourteenth Amendments.  (*Id.* ¶¶ 24–31.)  Count II also asserts that the DuPage County Sheriff

"failed to adequately train its officers to protect the rights of Illinois citizens" and as a result,

Mendrick, in his official capacity, is liable to Carr.  (*Id.* ¶ 30.)  Count III asserts that Beebe and

Monterrey are liable to Carr for the tort of battery under Illinois law.  (*Id.* ¶¶ 32–36.)  Finally,

Count IV seeks relief from Monterrey for Beebe's actions pursuant to the doctrine of *respondeat*

*superior*.  (*Id.* ¶¶ 37–40.)

On February 28, 2022, more than 90 days after Carr filed the Complaint, we ordered Carr

to file proof of service on the defendants by March 10, 2022.  (Dkt. No. 12.)  On March 10, Carr

submitted a certificate of service stating that he had served all three defendants.  (Dkt. No. 15.)

According to the accompanying return-of-service forms, the process server had purported to

serve Mendrick and Beebe at their residences by leaving a copy of the summons and complaint

with an individual named "Nancy" in "c/o" either Mendrick or Beebe. (Dkt. No. 15-1 at 2–3.) On March 21, we ordered Carr to either submit a document that clarified Nancy's identity or properly serve Mendrick and Beebe and submit proof of service by March 28. (Dkt. No. 16.) Carr requested an extension of this deadline to April 1, which we granted. (Dkt. Nos. 17, 18.) On April 1, Carr submitted a response stating that Nancy is a representative of the DuPage County Sheriff's Office. (Dkt. No. 19.) Because Carr's submission did not clarify whether Nancy was authorized to accept service on behalf of Mendrick and Beebe, on April 29 we ordered Carr to explain why service on Nancy was proper under Rule 4(e) or otherwise properly serve and submit proof of service of both defendants by May 6, 2022. (Dkt. No. 21.) Carr served Mendrick and Beebe and submitted proof of service by the May 6 deadline. (Dkt. Nos. 22, 22-1, 23.) Mendrick and Beebe now move to dismiss all counts against them under Rules 12(b)(5) and (6).

## LEGAL STANDARD

A defendant may move under Rule 12(b)(5) to dismiss a complaint due to insufficient service of process. Fed. R. Civ. P. 12(b)(5). When a defendant files a Rule 12(b)(5) motion, the plaintiff bears the burden to prove that the defendant was properly served. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). The plaintiff must serve the defendant within 90 days of filing the lawsuit to avoid possible dismissal of the suit unless he can demonstrate good cause for inability to do so. Fed. R. Civ. P. 4(m). Where the plaintiff has not met this burden, the district court "must either dismiss the suit or specify a time within which the plaintiff must serve the defendant." *Cardenas*, 646 F.3d at 1005 (citing Fed. R. Civ. P. 4(m)). The decision to either dismiss or specify a time for service is discretionary. *Id*.

A defendant may also move under Rule 12(b)(6) to dismiss a complaint due to its failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When a defendant

files a Rule 12(b)(6) motion, the court must "treat all allegations as true and [] draw all reasonable inferences in the plaintiff's favor." *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022). Surviving a 12(b)(6) motion requires the plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plaintiff does not need to plead detailed facts to survive the motion, he still "must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022).

## ANALYSIS

Mendrick and Beebe move to dismiss all counts against them based on ineffective service under Rule 12(b)(5). (Mendrick Mot. at 3–4; Beebe Mot. at 1.) They contend that Carr's service was untimely because it was not made until May 6, 2022, well after the window for service set forth in Federal Rule of Civil Procedure 4 closed. (Mendrick Mot. at 3–4; Beebe Mot. at 1.) Mendrick and Beebe also move to dismiss Counts I and II against them under Rule 12(b)(6). (Mendrick Mot. at 4–11; Beebe Mot. at 2.) Beebe contends that we should dismiss Counts I and II against him because the Complaint fails to plausibly state that he was acting under color of state law at the time of the incident. (Beebe Mot. at 2.) Mendrick moves to dismiss Count II against him, arguing that Carr fails to plausibly allege that (1) Beebe was acting under color of state law and (2) the incident arose out of Mendrick's failure to train Beebe. (Mendrick Mot. at 7–11.)

4

I.      **Insufficient Service of Process (Counts I, II, and III)**

We begin with Mendrick and Beebe's contention that Carr did not timely serve them with process. Rule 4(m) of the Federal Rules of Civil Procedure gives the plaintiff 90 days to serve the defendant after filing the complaint. Fed. R. Civ. P. 4(m). Mendrick and Beebe contend that because Carr took more than 90 days to serve them and never showed good cause for the delay, we must dismiss the Complaint without prejudice under *Powell v. Starwalt*, 866 F.2d 964, 965 (7th Cir. 1989), which held that untimely service requires dismissal, absent good cause. (Mendrick's Reply in Support of His Combined Rule 12(b)(5) & (6) Motion to Dismiss Plaintiff's Complaint ("Mendrick Reply") (Dkt. No. 28) at 5; Beebe's Reply to Plaintiff's Response to Combined Rule 12(b)(5) & (6) Motion to Dismiss Plaintiff's Complaint ("Beebe Reply") (Dkt. No. 38) at 1.)

*Powell*'s reasoning, however, relied on an older version of the Federal Rules. *Powell*, 866 F.2d at 965. In 1989—when *Powell* was decided—Rule 4(j) provided that "[i]f a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed . . . ." *Id.* (quoting Fed. R. Civ. P. Amend. Act of 1982 4(j)). This rule was drafted so that "dismissal is mandatory if a defendant is not served within 120 days, unless the plaintiff can show good cause for the delay." *Geiger v. Allen*, 850 F.2d 330, 331–32 (7th Cir. 1988). The now-operative Rule 4(m), however, states that "if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant *or order that service be made within a specified time*." Fed. R. Civ. P. 4(m) (emphasis added). This rule authorizes the court to "relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." Fed.

5

R. Civ. P. 4(m) advisory committee's note to 1993 amendment.  Thus, even when a plaintiff

lacks any justification for the delay of service, Rule 4(m) allows us to excuse the delay.  *United*

*States v. McLaughlin*, 470 F.3d 698, 701 (7th Cir. 2006); *see also United States v. Ligas*, 549

F.3d 497, 501 (7th Cir. 2008) ("If the plaintiff cannot show good cause, then the decision to

grant an extension is left to the discretion of the district court.").

In this case, Carr timely but unsuccessfully attempted to serve Mendrick and Beebe

(through "Nancy") less than a month after filing the Complaint but neglected to file proof of

service.  (Dkt. Nos. 12, 15, 15-1.)  After ordering Carr to clarify Nancy's authority to accept

service and granting him an extension to respond or effectuate service (Dkt. Nos. 16, 18), we

concluded that it was still "unclear whether Nancy was authorized to accept service on Mendrick

and Beebe's behalf." (Dkt. No. 21.)  We then exercised our discretion again to "order that

service be made within a specified time," Fed. R. Civ. P. 4(m), (Dkt. No. 21), and Carr met our

new deadline.  (Dkt. Nos. 22, 22-1, 23.)  Because we are not obligated to dismiss Carr's claims,

we deny Mendrick's and Beebe's motions to dismiss under Rule 12(b)(5).

## II.    Under Color of State Law (Counts I and II)

We next turn to Mendrick's and Beebe's contention that Carr's Complaint fails to state a

claim for unreasonable seizure against Beebe (Count I) and excessive force and failure to protect

against Beebe and Mendrick (Count II) because it fails to allege that Beebe was acting under

color of state law.  Mendrick and Beebe argue that Beebe was not acting under color of state law

because he was off duty, did not display a badge, and did nothing to identify himself as a police

officer.  (Mendrick Mot. at 6.)[2]  Carr responds that we can infer that Beebe must have identified

---

[2] Because Beebe's motion to dismiss simply incorporates by reference Mendrick's arguments regarding color of law (Beebe Mot. at 2), we cite to Mendrick's motion when discussing Mendrick's and Beebe's color-of-law arguments.

himself as an officer and therefore acted under color of state law because Carr was later arrested

for resisting a peace officer. (Plaintiff's Response to Defendants' Combined Rule 12(b)(5) & (6)

Motion to Dismiss ("Pl. Resp. to Mendrick Mot.") (Dkt. No. 27) at 3.)

To state a claim under section 1983 against either Beebe or Mendrick, Carr must

plausibly allege that Beebe was acting "under color of state law" when he deprived Carr of a

constitutional right. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010); *Jenkins v. Bartlett*, 487

F.3d 482, 492 (7th Cir. 2007) ("[T]here can be no liability under *Monell* for failure to train when

there has been no violation of the plaintiff's constitutional rights.").[3] "[A] § 1983 defendant acts

'under color of state law when he abuses the position given to him by the State.'" *DiDonato v.*

*Panatera*, 24 F.4th 1156, 1159–60 (7th Cir. 2022) (quoting *West v. Atkins*, 487 U.S. 42, 49–50

(1988)). The mere fact that the defendant is a state employee, however, does not necessarily

mean he is acting under color of state law, "[n]or is it dispositive whether the defendant was on-

or off-duty at the time the incident occurred." *Id*. at 1161. Rather, at the pleading stage, the

color-of-law determination largely turns on the nature of the specific acts the state official

performed and whether these acts are "related in some way to the performance of the official's

duties." *Wilson*, 624 F.3d at 392. This fact-intensive inquiry depends on many considerations,

such as whether the officer "was engaged in police activity, [] displayed any police power, or []

possessed any indicia of his office at the time." *Bladdick v. Pour*, 833 F. Supp. 2d 1032, 1038

(S.D. Ill. 2011) (citing *Latuszkin v. City of Chicago*, 250 F.3d 502, 506 (7th Cir. 2001)).

For example, in *Pickrel v. City of Springfield*, 45 F.3d 1115, 1117–19 (7th Cir. 1995), the

Seventh Circuit held that a complaint sufficiently pled that an off-duty officer acted under color

---

[3] As will be discussed, because Carr has sued Mendrick in his official capacity as DuPage
County Sheriff, he can be held liable for a failure to train only under *Monell v. Department of
Social Services*, 436 U.S. 658 (1978).

of law where the plaintiff alleged that the officer wore his police uniform, displayed his badge

and gun, parked his marked squad car outside, and arrested and charged the plaintiff with

resisting a peace officer.[4]  In *Coles v. City of Chicago*, 361 F. Supp. 2d 740, 749 (N.D. Ill. 2005),

an off-duty police officer assisted security guards at a nightclub to restore order following a

fight, as city policy required him to do.  *Coles*, 361 F. Supp. 2d at 742–43.  Though he did not

wear a uniform or carry a badge, he shouted "police, police, police" and ordered people out of

the club, which he characterized as "doing police work."  *Id.* at 742, 749.  The court determined

that the officer was "motivated (at least in part) by a desire to perform the police duties of

breaking up the fighting crowd," which created a triable issue of whether he acted under color of

law.  *Id.*  By contrast, in *Zienciuk v. City of Chicago*, No. 01 C 3769, 2002 WL 1998309, at *6

(N.D. Ill. Aug. 28, 2002), where two off-duty police officers, neither in uniform, started a bar

fight, the officers were not acting under color of state law because the fight was personal and

unrelated to their duties as police officers.  *Zienciuk*, 2002 WL 1998309, at *2, *6.

We find that Carr has plausibly alleged that Beebe acted under color of law.  Here, as was

the plaintiff in *Pickrel*, Carr was charged with resisting a peace officer.  (Pl. Resp. to Mendrick

Mot. at 3; Compl. ¶ 22.)  In Illinois, "a person who knowingly resists or obstructs the

performance by one known to the person to be a peace officer . . . of *any authorized act within*

*his or her official capacity* commits a Class A misdemeanor."  720 Ill. Comp. Stat. 5/31-1(a)

(emphasis added).  Illinois courts define this crime as involving "a physical act of resistance or

obstruction . . . that impedes, hinders, interrupts, prevents, or delays the performance of *the*

---

[4] Although *Pickrel* predated *Twombly* and *Iqbal* and therefore applied a more relaxed pleading
standard, we still give it considerable weight because the Seventh Circuit has continued to rely
on it to determine whether the color-of-law issue is sufficiently pled post-*Twombly/Iqbal*.  *See,*
*e.g.*, *DiDonato*, 24 F.4th at 1160 ("We concluded *Pickrel* had pled enough to survive a motion to
dismiss based on her allegations that the officer was wearing his police uniform, complete with
badge and gun, and driving his marked squad car at the time of their encounter").

*officer's duties*, such as by going limp or forcefully resisting arrest." *Brooks v. City of Aurora*, 653 F.3d 478, 484 (7th Cir. 2011) (quoting *People v. Agnew-Downs*, 404 Ill. App. 3d 218, 226 (2d Dist. 2010)) (emphasis added). Although not explicitly stated in the Complaint, we can reasonably infer that the charge against Carr for resisting a peace officer stemmed from his interaction with Beebe. At this stage of the litigation, moreover, it is plausible that Carr was charged for resisting a peace officer because Beebe's actions were related to his duties as a deputy sheriff. And unlike the police officers who started a bar fight in *Zienciuk*, Beebe was plausibly trying to identify suspicious individuals in his role as a security guard. (Compl. ¶ 13.) Beebe's conduct at the time is thus more like the "police work" carried out by the off-duty officer in *Coles*, 361 F. Supp. 2d at 747. Because it is plausible that Beebe was acting under color of state law during his interaction with Carr, Beebe's motion to dismiss is denied.

### III. Failure to Train (Count II)

We finally consider whether Carr has sufficiently pled a failure-to-train claim against Mendrick. Because Carr brings his failure-to-train claim against Mendrick in his official capacity as the DuPage County Sheriff, we treat it as a claim against the municipality (DuPage County) itself. *Yeksigian v. Nappi*, 900 F.2d 101, 103 (7th Cir. 1990).

Mendrick argues that we should dismiss this claim because Carr has not plausibly pled a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (Mendrick Mot. at 7–11.) Because "a municipality cannot be held liable under a respondeat superior theory of liability," a plaintiff suing a municipality for a constitutional violation must prove that "the violation resulted from a formal policy, an informal custom, or a decision 'made by [the municipality's] lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 879 (7th Cir. 2019) (quoting *Monell*, 436 U.S. at 694). To prevail on such a claim, the plaintiff must prove that "a municipal

9

'policy or custom' is the 'moving force' behind a constitutional violation and [] the municipal defendant can be said to be culpable or at fault for the violation." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th Cir. 2022) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403–06 (1997)). The easiest way to allege such a claim is to allege an affirmative municipal policy, action, or custom that is itself unconstitutional. *See J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377–78 (7th Cir. 2020) (en banc). In the absence of an affirmative action or policy, however, a plaintiff can still plead a *Monell* claim based on the municipality's failure to train its employees, as Carr does here. (Compl. ¶ 30); *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989). We treat a failure to train as a "policy" for *Monell* purposes if it amounts to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.

"[T]he path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative municipal action, a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous." *J.K.J.*, 960 F.3d at 378. The "deliberate indifference" standard requires "the presence and proof of 'a known or obvious' risk." *Id*. at 381. Ordinarily, the plaintiff must allege that a consistent policy, rather than just a one-off event, is the cause of the incident. *See Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). A municipality's "'decision not to train certain employees' despite actual or constructive notice that their" decision amounts to deliberate indifference to the detriment of the public's constitutional rights, is the "'functional equivalent of a decision by the [municipality] itself to violate the Constitution.'" *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *Connick v. Thompson,* 563 U.S. 51, 61–62 (2011)).

Here, Carr does not allege any facts from which we can reasonably infer that the DuPage County Sheriff's Office has failed to train its officers in the use of force. The Complaint does

10

not allege that there was an obvious risk that would have put Mendrick on actual or constructive

notice that DuPage County Sheriff employees use unreasonable force, nor does it allege a pattern

of similar constitutional violations. Rather, the Complaint merely alleges that Mendrick has

failed to train the DuPage County Sheriff's police officers. (Compl. ¶ 30.) Absent any

supporting factual allegations, that allegation is only a "threadbare recital of [an] element[] of a

cause of action" and is too conclusory to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Consequently, Carr has failed to state a *Monell* claim for failure to train on against Mendrick.

### CONCLUSION

For the reasons set forth above, we grant Mendrick's motion to dismiss (Dkt. No. 25) and

deny Beebe's motion to dismiss (Dkt. No. 34). We dismiss Count II as against Mendrick

without prejudice. The remaining counts may move forward as currently alleged. Carr shall

have until November 14, 2022 to file an amended complaint re-pleading his claim against

Mendrick if he can do so in accordance with this Opinion and Federal Rule of Civil Procedure

11. The status hearing set for November 3, 2022, is stricken and reset to December 15, 2022. It

is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: October 24, 2022

11