UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTER CARR ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21-cv-6301 |
| v. ) | |
| ) | Judge Marvin E. Aspen |
| JAMES MENDRICK, in his official capacity ) | |
| as DuPage County Sheriff, MONTERREY ) | |
| SECURITY CONSULTANTS, INC., and ) | |
| BRIAN BEEBE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MARVIN E. ASPEN, District Judge:

Defendant James Mendrick moves to dismiss Plaintiff Walter Carr's claim against him under Federal Rule of Civil Procedure 12(b)(6). (Defendant's Successive Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Complaint ("Mot. to Dismiss") (Dkt. No. 42).) For the following reasons, we deny Mendrick's motion.

**FACTUAL BACKGROUND**

We draw the following allegations from Carr's Amended Complaint and accept them as true for purposes of this motion. *See Pavlock v. Holcomb*, 35 F.4th 581, 585 (7th Cir. 2022). On November 24, 2019, Carr and Defendant Brian Beebe, a deputy sheriff for DuPage County, were both working as security guards at Soldier Field stadium in Chicago. (Amended Complaint ("Am. Compl.") (Dkt. No. 41) ¶¶ 10–12.) That afternoon, Beebe observed Carr in a restricted area. (*Id.* ¶ 13.) Not knowing that Carr was also a security guard, Beebe confronted Carr and grabbed him. (*Id*. ¶¶ 13–14.) Beebe then struck Carr and forcefully took him to the ground. (*Id*. ¶ 16.) Beebe's actions injured Carr, causing head pain, bruises, and lacerations, and Carr was

taken to the hospital. (*Id.* ¶¶ 16–18.) After the incident, police arrested Carr and charged him with resisting a peace officer. (*Id.* ¶ 22.) The Cook County State's Attorney later dismissed the charge against Carr. (*Id.* ¶ 23.)

Mendrick is the DuPage County Sheriff. (*Id.* ¶ 2.) From 2018 to 2021, there were approximately 900 reported incidents of DuPage County deputy sheriffs using excessive force against civilians, including an incident in the summer of 2020 where a deputy sheriff punched a handcuffed detainee in the head. (*Id.* ¶ 25.) The number of reported excessive force incidents increased each year from 2019 to 2021 because Mendrick failed to adequately train deputy sheriffs regarding the need to refrain from manipulating, coercing, and physically and psychologically abusing suspects and witnesses. (*Id.* ¶ 26.) Carr alleges that Mendrick's failure to train deputy sheriffs in these areas caused Beebe's assault on him. (*Id.* ¶ 27.)

## PROCEDURAL BACKGROUND

Carr brought this lawsuit against Beebe in his individual capacity, Mendrick in his official capacity as DuPage County Sheriff, and Defendant Monterrey Security Consultants, Inc. ("Monterrey"), which employed Beebe as a security guard. (*See generally* Complaint ("Compl.") (Dkt. No. 1).) Mendrick and Beebe moved to dismiss Carr's claims against them. (Dkt. Nos. 25, 34.) We denied Beebe's motion. *Carr v. Mendrick*, No. 21-cv-6301, 2022 WL 13919326, at *5 (N.D. Ill. Oct. 24, 2022). We granted Mendrick's motion but gave Carr an opportunity to replead his claim against Mendrick. *Id.*

Carr thereafter filed an Amended Complaint. As in the original Complaint, Carr's Amended Complaint asserts that Mendrick, in his official capacity as DuPage County Sheriff, is liable under 42 U.S.C. § 1983 for Beebe's use of excessive force by failing "to adequately train [his] officers to protect the legal rights of Illinois citizens." (*Compare* Compl. ¶¶ 27–31 (Count II), *with* Am. Compl. ¶¶ 32–36 (Count II)); *see Carr*, 2022 WL 13919326, at *1. Mendrick now

2

moves to dismiss the Amended Complaint's claim against him. Carr did not oppose or otherwise respond to Mendrick's motion.

## LEGAL STANDARD

When a defendant files a Rule 12(b)(6) motion, the court must "treat all allegations as true and [] draw all reasonable inferences in the plaintiff's favor." *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022). Surviving a 12(b)(6) motion requires the plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plaintiff does not need to plead detailed facts to survive the motion, he still "must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (quotation marks omitted).

## ANALYSIS

"Section 1983 provides a federal remedy against state actors who deprive others of federal rights." *Bohanon v. City of Indianapolis*, 46 F.4th 669, 675 (7th Cir. 2022). Carr again brings his § 1983 failure-to-train claim against Mendrick in his official capacity as the DuPage County Sheriff, so we again treat it as a claim against DuPage County itself. *Yeksigian v. Nappi*, 900 F.2d 101, 103 (7th Cir. 1990).

Under the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), local governments like DuPage County are not vicariously liable for their employees' constitutional violations; instead, they "can be held responsible for constitutional violations only when they themselves cause the deprivation of rights." *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc); *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 826 (7th

Cir. 2022). To prevail on a *Monell* claim against a municipal entity, the plaintiff must prove four elements: (1) that a municipal "policy or custom" was (2) the "moving force" behind (3) a constitutional or federal violation and (4) the municipal entity "can be said to be culpable or at fault for the violation." *Milchtein*, 42 F.4th at 826; *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). The underlying constitutional violation at issue here is the alleged use of excessive force—Beebe grabbing, striking, and forcibly taking Carr to the ground. (Am. Compl. ¶¶ 14–16, 33–36); *see Taylor v. City of Milford*, 10 F.4th 800, 806 (7th Cir. 2021) ("[T]he Fourth Amendment protects against the use of excessive force.").

Mendrick moves to dismiss Carr's *Monell* claim on two grounds. Although Carr failed to respond to Mendrick's motion, we still must evaluate whether either of these grounds warrants dismissing Carr's claim. *Marcure v. Lynn*, 992 F.3d 625, 633 (7th Cir. 2021) (holding that a court cannot grant a Rule 12(b)(6) motion simply because it is unopposed); *see also Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency.").

**I.      Under Color of State Law**

Mendrick first urges us to reconsider our previous ruling that "it is plausible that Beebe was acting under color of state law during his interaction with Carr." (Mot. to Dismiss at 4–9); *Carr*, 2022 WL 13919326, at *4. As we previously explained, "Carr must plausibly allege that Beebe was acting 'under color of state law' when he deprived Carr of a constitutional right" to state a claim against Mendrick. *Carr*, 2022 WL 13919326, at *3. Mendrick "protests that [Carr] does not allege sufficient facts to bring Mr. Beebe's off-duty, private, unauthorized, and allegedly *illegal* acts . . . within the scope of Section 1983's 'action under color of law' requirement and, therefore, no such liability may plausibly be imputed" to Mendrick. (Mot. to Dismiss at 4–5.)

4

As relevant here, Mendrick must "establish a manifest error of law or fact" to prevail on his request for reconsideration. *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quotation marks omitted). "A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, application, or failure to recognize controlling precedent." *Id.* (quotation marks omitted). Moreover, reconsideration is not appropriate when the requesting party merely "rehash[es] previously rejected arguments" or advances arguments "that could and should have been made before the district court" ruled. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); *LB Credit Corp. v. Resol. Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). Although "motions to reconsider are permitted, they are disfavored." *Santos v. Williams*, No. 15 C 5325, 2017 WL 2189102, at *1 (N.D. Ill. May 18, 2017) (quotation marks omitted).

Mendrick does not acknowledge these standards, let alone explain why his request is appropriate in view of them. (Mot. to Dismiss at 4–9.) Even so, our independent review of Mendrick's arguments confirms that reconsideration is unwarranted.

First, Mendrick contends that we did not address certain "key considerations" in determining whether Beebe acted under color of law—namely, whether his actions were in some way related to his performance of official police duties. (*Id.* at 6.) This contention is inaccurate. Not only did we acknowledge that "the color-of-law determination largely turns on the nature of the specific acts the state official performed and *whether these acts are related in some way to the performance of the official's duties*," we then identified specific considerations that relate to this inquiry: "whether the officer was engaged in police activity, displayed any police power, or possessed any indicia of his office at the time." *Carr*, 2022 WL 13919326, at *3 (emphasis added) (quotation marks and alterations omitted). And Mendrick's apparent disagreement with

how we evaluated these considerations does not entitle him to reconsideration. *E.g.*, *Centeno v. LVNV Funding, LLC*, No. 17 C 5233, 2019 WL 13077046, at *1 (N.D. Ill. Oct. 24, 2019); *Peterson v. Vill. of Downers Grove*, No. 14 C 09851, 2016 WL 3538929, at *7 (N.D. Ill. June 29, 2016).

Second, Mendrick takes issue with our conclusion that Carr's allegation that he was charged with resisting a peace officer supported our color-of-law ruling, arguing that the conduct of third parties (here, the Chicago Police and/or Cook County State's Attorney's Office) cannot plausibly show that Beebe was acting under color of law. (Mot. to Dismiss at 6–8.) Mendrick already made this argument in briefing his first motion to dismiss (Dkt. No. 28 at 6–7) and we implicitly rejected it. *See Caisse Nationale*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments[.]").

Third, Mendrick lists the allegations that, according to him, show that Beebe was not "purporting to exercise 'police authority' 'under color of state law' at any time." (Mot. to Dismiss at 7.) But again, Mendrick reasserts an argument that he made in his previous briefing (Dkt. No. 25 at 6) and that we already considered.

Fourth, Mendrick argues that because Carr alleges "that Beebe's use of excessive force was 'without legal cause[,]'" Beebe could not have acted under "color of law" when he seized Carr. (Mot. to Dismiss at 8 (citing Am. Compl. ¶ 34).) Carr made the same allegation in his original Complaint, however. (Compl. ¶ 29.) Mendrick therefore should have made this argument in connection with his previous motion to dismiss. He did not (*see generally* Dkt. Nos. 25, 28), so we need not consider it. *LB Credit Corp.*, 49 F.3d at 1267 (a motion to reconsider "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment").

6

Finally, Mendrick argues that under Seventh Circuit precedent, Beebe's "jurisdiction to enforce the law (and ability to act under the color of it)" is limited to DuPage County, so his alleged misconduct, which took place in Cook County, could not have been under color of law. (Mot. to Dismiss at 8–9.) As with the preceding argument, Mendrick could have asserted this argument in connection with his first motion to dismiss. Yet nowhere in this briefing did he contend that the location of Beebe's actions was relevant to the color-of-law analysis under Seventh Circuit precedent. (*See generally* Dkt. Nos. 25, 28.)

What is more, the only Seventh Circuit case Mendrick cites, *Askew v. Bloemker*, 548 F.2d 673 (7th Cir. 1976), does nothing to support his argument. The *Askew* court indicated that a St. Louis, Missouri police officer's actions at a residence in a different state (Illinois) could not have been under color of state law. 548 F.2d at 677. In contrast, Beebe's actions took place in the same state where he is employed. *See Davis v. Kelly*, 755 F. Supp. 199, 203 (N.D. Ill. 1990) (distinguishing *Askew* on the same basis). Actions taken by Beebe outside of DuPage County, but still within Illinois, can be under color of state law. *Id.* at 200, 203 (rejecting Chicago police officer's argument that her arrest of the plaintiff was not under color of state law because it did not take place in Chicago); *Murphy v. Chi. Transit Auth.*, 638 F. Supp. 464, 467 (N.D. Ill. 1986) (noting that a police officer "who effectuates an arrest outside his jurisdiction, even though without actual authority to make the arrest," acts under color of state law).

In sum, there is no basis to reconsider our conclusion that Carr has plausibly alleged that Beebe was acting under color of state law. Mendrick's color-of-law arguments therefore do not warrant dismissing Carr's claim against him.

7

II. **Policy or Custom**

Mendrick also argues that the Amended Complaint fails to plausibly allege the municipal policy or custom element of a *Monell* claim.[1] (Mot. to Dismiss at 9–13.) A plaintiff can assert a *Monell* claim based on a municipal entity's failure to train its employees, as Carr does here. (Am. Compl. ¶ 35); *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989). A failure to train is considered a municipal "policy or custom" for *Monell* purposes if it "amounts to deliberate indifference to the rights of the persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388–89. A municipal entity's "'decision not to train certain employees,' despite actual or constructive notice that their actions constitute deliberate indifference to the rights of the public with whom they come into contact, is the 'functional equivalent of a decision by the [entity] itself to violate the Constitution.'" *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011)).

Deliberate indifference may arise in one of two ways. First, a municipal entity is deliberately indifferent "when a repeated pattern of constitutional violations makes 'the need for further training . . . plainly obvious to the [municipal] policymakers.'" *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (quoting *City of Canton*, 489 U.S. at 390 n.10). In these circumstances, "notice is established by 'a prior pattern of similar constitutional violations.'" *Bohanon*, 46 F.4th at 676–77 (quoting *J.K.J.*, 960 F.3d at 380). Second, a municipal entity "acts with deliberate indifference when, 'in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights,' that the deficiency exhibits deliberate indifference

---

[1] Mendrick does not argue that the Amended Complaint fails to plausibly allege the municipal fault and "moving force" causation elements of a *Monell* claim. (Mot. to Dismiss at 9–13; *see Bohanon*, 46 F.4th at 676.

on the part of municipal policymakers." *Jenkins*, 487 F.3d at 492 (quoting *City of Canton*, 489 U.S. at 390). In this scenario, the risk of constitutional violations is "so high and the need for training so obvious that the [municipal entity's] failure to act can reflect deliberate indifference and allow an inference of institutional capability, even in the absence of a similar prior constitutional violation." *J.K.J.*, 960 F.3d at 380; *see also Flores*, 997 F.3d at 731 ("[F]ailure-to-train liability does not require proof of widespread constitutional violations before that failure becomes actionable; a single violation can suffice where a violation occurs and the plaintiff asserts a recurring, obvious risk."). "Under either scenario, the finding of 'deliberate indifference' is derived from the [municipal entity's] failure to act in the face of 'actual or constructive notice' that such a failure is likely to result in constitutional deprivations." *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (citations omitted).

Mendrick first contends that "as indicated by the above quoted [S]upreme [C]ourt jurisprudence," he has no duty to train his officers to protect the rights of citizens they encounter outside of DuPage County. (Mot. to Dismiss at 10.) But Mendrick does not identify the Supreme Court cases upon which he purportedly relies for this contention, and we do not see anything in Mendrick's discussion of Supreme Court precedent that supports it. Nor does Seventh Circuit precedent support Mendrick's related contention that Illinois police officers need to only refrain "from intruding upon citizens' constitutional rights within their own jurisdictions." (*Id.* (citing *Jackson v. City of Joliet*, 715 F.2d 1200, 1203 (7th Cir. 1983), and *First Midwest Bank, Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 993 (7th Cir. 2021)).) In *Jackson*, the Seventh Circuit held that "an attempt by state officers to assist at an accident is not a deprivation of life without due process of law under the Fourteenth Amendment when the attempt fails because of the negligence or even gross negligence of the officers or their

9

superiors, and the accident victim dies." 715 F.2d at 1206. In *First Midwest Bank*, the Seventh Circuit explained that the Fourteenth Amendment's Due Process Clause generally "does not impose a duty on the state to protect against injuries inflicted by private actors," and it found that an off-duty police officer did not act under color of state law when he shot his friend after a night of drinking. 988 F.3d at 983, 987–89. Neither case suggests in any way that a police officer from DuPage County is permitted to violate the constitutional rights of Illinois citizens he encounters in Cook County or any of Illinois's other counties.

To the contrary, a police officer in Illinois "has the duty to maintain public order wherever he may be, as long as he is within the state," and "[h]is duties are not confined to a specific time and place." *People v. Weaver*, 100 Ill. App. 3d 512, 514 (4th Dist. 1981) (citing *Arrington v. City of Chicago*, 45 Ill. 2d 316, 318 (1970)). For example, a police officer employed by an Illinois municipality may make an arrest anywhere in the state, 725 Ill. Comp. Stat. 5/107-5(c); *Davis*, 755 F. Supp. at 203, and "in making an arrest within the state, a police officer is always engaged in the execution of his official duties." *Weaver*, 100 Ill. App. 3d at 514. Because a DuPage County deputy sheriff like Beebe can execute his official duties in any Illinois county, it stands to reason that he must do so in a constitutional manner regardless of which county he is in.

Mendrick next asserts that Carr fails to allege any facts that plausibly indicate that he "was or should have been aware of 'recurrent situations' where, 'under similar circumstances' off-duty officers engaged in the use of excessive force while working in separate jurisdictions as private security guards." (Mot. to Dismiss at 12; *see also id.* at 13 ("No facts have been alleged to indicate the Sheriff was on notice of any *need* to train his deputies for their private forays into private security work.").) But Mendrick defines the relevant inquiry too narrowly. Mendrick

10

does not direct us to any caselaw requiring the incidents that put a municipality on notice to involve the exact same circumstances as the constitutional violation at issue. In particular, the Seventh Circuit's decision in *Robles* does not impose such a requirement, as Mendrick seems to suggest. (*See* Mot. to Dismiss at 12.) In *Robles*, a Fort Wayne police officer was working off-duty as a security officer at a tavern when he threw the plaintiff to the tavern's floor. 113 F.3d at 733–34. The plaintiff alleged that the officer used excessive force against him and "that the City failed to adequately train and to supervise its police officers with respect to *off-duty security positions*."[2] *Id.* at 734 (emphasis added). Because the plaintiff's claim against the City was based on an alleged failure to train officers regarding off-duty security work, the Seventh Circuit evaluated whether the City was aware of "constitutional violations occurring while its police officers were performing off-duty security work." *Id.* at 736. The plaintiff had "no evidence of a pattern of similar violations or of the City's awareness of that pattern," so he could not show the City's deliberate indifference "to any need for the *further* training" (i.e., training regarding off-duty security work) that he alleged was necessary. *Id.* (emphasis added).

Unlike the plaintiff in *Robles*, Carr has not expressly limited his failure-to-train theory to a failure to train officers regarding off-duty encounters. He alleges that Mendrick has failed to adequately train his officers in the need to refrain from manipulating, coercing, and physically and psychologically abusing suspects and witnesses. (Am. Compl. ¶ 26.) And it should be self-evident to these officers that they are held to the same constitutional standards while performing off-duty security work as they are while performing on-duty police work. *See Robles*, 113 F.3d at 736.

---

[2] The plaintiff may have included this "off-duty" limitation because it was undisputed "that the City adequately trained its police officers with respect to on-duty citizen encounters." *Robles*, 113 F.3d at 735–36.

11

Ultimately, to survive Mendrick's motion to dismiss, Carr must plausibly allege that Mendrick failed to adequately train DuPage County officers in their use of force despite actual or constructive notice that such a failure would likely lead to incidents of excessive force. Carr has done so. Carr alleges that "[f]rom 2018 to 2021, there were approximately 900 reported incidents of DuPage County Sheriffs using excessive force against civilians." (Am. Compl. ¶ 25.) We can reasonably infer from this allegation that there were at least a couple hundred excessive force reports lodged in 2018 and 2019 before Carr's alleged constitutional violation in November 2019, and so many reports in less than two years plausibly suggests a pattern of excessive force. It is likewise plausible that the number of reported incidents, as well as the fact that the number of incidents increased in 2019 (*id.* ¶ 26), put Mendrick on notice that additional (or better) excessive-force training was needed. Yet Mendrick still did not adequately train the deputy sheriffs to refrain from physically abusing suspects and witnesses (*id.*), and physical abuse encompasses the use of force. Thus, Carr has plausibly alleged that Mendrick's failure to adequately train his officers despite repeated reports of excessive force reflects deliberate indifference that renders this failure a policy or custom for purposes of *Monell*. *See Jenkins*, 487 F.3d at 492. We decline to dismiss Carr's claim against Mendrick on this basis as well.

## CONCLUSION

For the foregoing reasons, we deny Mendrick's successive motion to dismiss (Dkt. No. 42). Mendrick shall have until May 11, 2023, to answer Carr's Amended Complaint. The status hearing set for May 18, 2023, is stricken and reset to June 1, 2023. It is so ordered.

                                                                Marvin E. Aspen
                                                                United States District Judge

Dated: April 27, 2023